

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/04/2011

| | | |
|---|---|---|
| IN RE: | § | |
| ASPEN EXPLORATION INC | § | CASE NO: 08-50325 |
|    Debtor(s) | § | |
| | § | CHAPTER 7 |

**MEMORANDUM OPINION AND ORDER
DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOC #798),**

      The United States, Internal Revenue Service, ("IRS") filed a proof of claim in this bankruptcy case for FICA and FUTA taxes assessed against Aspen Drilling Ventures (hereafter, "ADV") and Aspen Exploration – Rancho Blanco 4 Joint Venture (hereafter, "RB4"). The IRS asserts that Debtor is liable for ADV and RB4 taxes because those entities are Debtor's alter egos. Janet Northrup, Chapter 7 Trustee of Aspen Exploration, objected to the IRS claim. The Trustee now moves for summary judgment, asserting that because Debtor did not have an equity interest in ADV, the IRS cannot meet its burden of proof for alter ego liability. The Court concludes that there are issues of material fact for trial. The cross motions for summary judgment are denied and the parties are reminded of the pretrial conference before Judge Bohm on January 20.

UNDISPUTED FACTS

A.    The Bankruptcy Case and the Proof of Claim

      On November 17, 2008, an involuntary bankruptcy petition was filed against Aspen Exploration, Inc. ("Aspen" or "Debtor"). An order for relief was entered, and Janet Northrup was appointed the Chapter 7 Trustee (the "Trustee").

      On December 3, 2009, the Internal Revenue Service (the IRS) filed a proof of claim, Claim Number 277, for $908,259.04, for employment and unemployment taxes assessed against ADV and RB4.[1] (That claim has been amended, but the amendments are not at issue in the motion for summary judgment.)

B.    The IRS Assertion that the Trustee is Judicially Estopped From Denying Alter Ego Liabilty

      On May 19, 2009, the Trustee filed a complaint initiating Adversary Proceeding No. 09-5003, seeking injunctive relief against several banks (the "Banks"). The Trustee alleged that when Debtor's creditors were on the verge of seizing Debtor's assets, Debtor's principals formed ADV and fraudulently induced transfers of Debtors assets to ADV, mainly to facilitate withdrawal and misapplication of those assets. The Trustee alleged that the principals of Aspen

---

[1] The Tax Claim includes $778,519.70 as a priority claim, and $129,739.34 as an unsecured priority claim for penalties and interest.

were also the principals of ADV,[2] that they maintained complete control over both Aspen and ADV, and that they "appear to have treated Aspen Drilling as the mere continuation of the Debtor."[3] ADV allegedly shielded approximately one million dollars from Debtors' creditors.[4] The Trustee asked the Court to disregard ADV as a separate corporation and to find that ADV was merely the alter ego of Aspen.[5]

At the preliminary injunction hearing on May 28, 2009, the Trustee presented voluminous exhibits and lengthy testimony suggesting that Aspen and ADV were identical companies, and that ADV was merely a sham corporation set up to distribute salaries to the Aspen's principles. The exhibits included financial statements and "Purchase Information Statements" from the two entities that were described as virtually or "completely identical."[6] These exhibits were presented through the Trustee's forensic accountant, Mark Rabin, who testified at length about the relationship between Aspen and ADV.[7] This evidence was uncontroverted and compelling. The Court entered the preliminary injunction preventing any distribution of funds in the ADV accounts.[8] Soon thereafter the Banks consented to permanent relief in favor of the Trustee.[9]

After the Banks consented to permanent injunctions against transfer of the hidden funds, the Trustee amended her complaint to delete allegations about ADV's alter ego status. The amended complaint asked the Court to determine that the trapped funds constituted property of the estate. Some or all of the individual defendants were under indictment, facing criminal charges related to the company. The individual defendants were the controlling persons of ADV. By default judgments the Trustee has recovered substantial sums (nominally assets of ADV) for the estate.

C.   The Objection to Claim

Nearly a year later, the Trustee filed her Objection to IRS proof of Claim No. 277, alleging that the taxes asserted in the IRS's proof of claim are not owed by Aspen, but by ADV and RB4.[10] The IRS responded by conceding that "there are different taxpayer identification numbers pertaining to the tax liabilities asserted in the IRS proof of claim," but arguing that "the taxes actually pertain to the operation of the Debtor's business, and Aspen Drilling Ventures, Inc. and Aspen Exploration – Rancho Blanco 4 Joint Venture, [are] both alter egos of the Debtor."[11]

---

[2] *Id* at page 4.
[3] *Id* at page 9.
[4] *Id* at page 7.
[5] *Id* at page 8.
[6] Adv. Proc. 09-5003, Recorded Hearing of May 28, 2009, 2:48:08 p.m.
[7] Of particular note, counsel for the Trustee asked Mr. Rabin, "Are you aware of any differences between Debtor and Aspen Drilling?" Mr. Rabin replied, "Well, aside from a change in names, I have not seen anything. It's like they simply changed the name on the accounts, but the systems, the activities, and thee employees, seem like the same thing." Adv. Proc. 09-5003, Recorded Hearing of May 28, 2009 at 2:53:52.
[8] Adv. Proc. 09-5003, Docket # 4.
[9] Adv. Proc. 09-5003, Docket ## 32, 34, and 38.
[10] Docket #531.
[11] Docket #562, page 2.

D.     The Motion for Summary Judgment

In this, her second motion for Summary Judgment, the Trustee alleges that there can be no alter ego liability because Debtor owns no stock or equity interest in ADV or RB4.[12] The Trustee asserts that equity ownership is an absolute requirement of reverse piercing of the corporate veil.

The IRS filed a cross motion for summary judgment. The IRS argues that the Trustee is judicially estopped from denying alter ego liability. The IRS further, persuasively, argues that stock ownership is not an essential element for disregard of the corporate veil.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[13]

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F. 393, 405 (5th Cir. 2003). The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

---

[12] In her first motion for summary judgment, the Trustee asserted that the IRS could not assert alter ego liability because that was a right reserved to the Trustee. The Court denied the first motion for summary judgment, agreeing with the IRS that the Trustee's exclusive right pertained to recovering assets for the estate, not to claims against the estate.

[13] Rule 56 was amended, effective December 1, 2007. Although most changes were stylistic, the changes to Rule 56(c) were substantive. Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met. Effective December 1, 2007, the word "shall" was changed to "should". The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory committee's notes (2007). As one commentator noted, "even when a motion for summary judgment is properly made and supported, it need not be granted . . . [s]uch a motion may be granted - indeed, it should be granted - but it does not have to be granted." Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 Am. U. L. Rev. 85, 95 (2008).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp. Cattrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00 in United States Currency*, 537 F.3d at 507. When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelrs Indem. Co.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

JUDICIAL ESTOPPEL

A.   Judicial Estoppel In General

> Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988). The purpose of the doctrine is "to protect the integrity of the judicial process", by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* (Internal quotation marks, parentheses, and citation omitted). Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary.

> Most courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position.

*In re Coastal Plains, Inc.,* 179 F.3d 197, 205-06 (5th Cir. 1999).

B.   Judicial Estoppel With Respect to ADV

There is no dispute about the fact that the Trustee alleged, in Adversary Proceeding 09-5003, that ADV was Debtor's alter ego.

Arguably, the Trustee convinced the Court to accept that previous position. The Court issued a temporary restraining order and a preliminary injunction based on a complaint that included those allegations. However, it is not necessarily clear that the Court accepted that position, because there were alternative, and perhaps more compelling, allegations of fraud and of a sham to perpetuate a fraud.

The Trustee withdrew alter ego allegations prior to obtaining a final judgment determining that the assets of ADV were property of the estate. In reviewing the evidence, the Court believes that the decision was based more on proof that ADV was simply a sham to perpetuate a fraud than on proof of alter ego liability. Therefore the second requirement for application of judicial estoppel is not met.

C.   Judicial Estoppel With Respect to RB4

The IRS does not present any summary judgment evidence indicating that the Trustee asserted that RB4 was Debtor's alter ego or that the Trustee convinced the Court to accept that position. Therefore judicial estoppel does not apply to prevent the Trustee from asserting that RB4 and Debtor and not alter egos.

D.   Recovery of Property Does Not Necessarily Establish an Allegation That One Party is the Alter Ego of Another

The IRS reply to the Trustee's motion is focused on the fact that the Trustee recovered property from ADV and from RB4. The memorandum seems to assert that if the Trustee recovers assets from another entity, then the Trustee must be asserting that the other entity is Debtor's alter ego.

That argument has some appeal in equity, because if the Trustee has deprived ADV and RB4 of assets that could be used to satisfy the IRS claims against those entities, then the Trustee has deprived the IRS of its opportunity to collect the taxes.

But the Trustee may recover assets from another entity on a number of legal theories that do not require alleging or proving that the other entity is Debtor's alter ego. The other entity

may be a custodian for the debtor,[14] the Trustee might recover the property under one of the unique bankruptcy avoidance actions,[15] *etc.*

In this dispute, it may be that Debtor, ADV, and RB4 are alter egos. But because of the alternate bases for the results obtained, the Court believes that judicial estoppel is not applicable in this case.

## WHETHER ALTER EGO LIABILITY REQUIRES STOCK OWNERSHIP PIERCING THE CORPORATE VEIL WHEN NECESSARY TO PREVENT FRAUD

A.   Liability for ADV Taxes

Virtually all of the Trustee's motion for summary judgment is devoted to the argument that under Texas law alter ego liability cannot be imposed on this estate for ADV taxes because Debtor did not own stock in ADV.

The Court of Appeals for the Fifth Circuit has held that alter ego liability, especially as it relates to reverse piercing of the corporate veil, requires at least some equity ownership: *Zahra Spiritual Trust v. US* 910 F.2d 240 (5th Cir. 1990), *Bollore S.A. v. Import Warehouse, Inc.* 448 F.3d 317 (5th Cir. 2006).

But equity ownership may be explicit or implicit. In an excellent opinion, Judge Jernigan explains:

> this court … is bound by *Zahra* to conclude that while there must be an ownership interest between an individual and the corporation whose separateness is sought to be disregarded, it is possible that such ownership might exist indirectly or implicitly-such as where the actual record holder of the shares of the corporation holds them as a sham for the individual.

*In re Moore*, 379 BR 284, 296 (Bankr. ND TX 2007)

This Court agrees with the concerns that Judge Jernigan articulated in the *Moore* opinion with respect to the 5th Circuit's development and limitations on the doctrine of reverse splitting of the corporate veil. Especially in this Debtor's case it would seem to be terribly inequitable (and a reasonable basis for criticism of the law as hypertechnical) if the Trustee were allowed to take ADV's assets by alleging that ADV was a sham perpetuating a fraud (and thus deprive the IRS of its ability to execute on those assets) while at the same time the Trustee asserts Debtor's corporate shield against the IRS recovering taxes owed by the sham entity merely because ADV's stock was issued to Debtor's stockholders, not to Debtor.[16]

---

[14] Bankruptcy Code § 101(11) defines custodian and § 543 requires a custodian to turn over debtor's property to the trustee. *See also* Bankruptcy Code § 542.

[15] Bankrutpcy Code §§ 544-550.

[16] The Fifth Circuit has noted that the requirement of stock ownership has not been explicitly stated by the Texas Supreme Court. This might be an appropriate opportunity to consider whether direct ownership is required if the evidence establishes that ADV was indeed purely a sham to perpetuate a fraud.

B.  Piercing the Corporate Veil to Defeat Fraud or a Sham to Perpetrate a Fraud

One legal basis for avoiding that inequity can be found in *Castleberry* and *Permian Pedtroleum Co. v. Petroleos Mexicanos* 924 F.2d 635 (5th Cir. 1991). In the latter case, the Fifth Circuit explained that the *Castleberry* opinion[17] articulated a much broader doctrine (than traditional alter ego liability) that allows a court to reach an equitable result by piercing the corporate veil when the corporation is a "sham to perpetrate a fraud". Although the IRS has not explicitly articulated this doctrine as a basis for its claim against Debtor, federal pleading rules do not require precise designation of legal authority for the relief requested. That theory, *i.e.* "sham to perpetuate a fraud" is the theory that the Trustee used in Adversary Proceeding 09-5003 to recover ADV's assets for the bankruptcy estate, and the Trustee may be judicially estopped from denying liability on that concept in this adversary proceeding.

But the Court must leave that decision to Judge Bohm. For now, it is sufficient to conclude, as Judge Jernigan did, that there are material issues of fact for trial regarding whether the stockholders of ADV held the ADV stock on behalf of Debtor and whether the formation and operation of ADV was a sham to perpetuate a fraud. Therefore the Trustee's motion for summary judgment is denied as to ADV liability.

## LIABILITY FOR RB4 TAXES

It is not at all clear that the Trustee's motion for summary judgment includes RB4 taxes.

Paragraph 1 of the Trustee's motion, the Preliminary Statement, implies that the motion is limited to contending that the estate is not liable for ADV taxes. RB4 is not mentioned in the paragraph. As noted above, the memorandum contends that alter ego liability requires "ownership", but nowhere in the motion for summary judgment does the Trustee contend that the Debtor did not own an interest in RB4.

Perhaps the Trustee did not intend to include RB4 in her motion. That might be logical because her chart following paragraph 9 indicates that the RB4 taxes were only about $1,000. On the other hand, the Trustee's proposed form of order (that would grant her motion) includes the RB4 taxes.

In any event, Trustee's Exhibit 9 indicates that Debtor owned a small general partnership interest in RB4. Therefore, the Trustee's motion for summary judgment is denied as to RB4. Even if Debtor did not own a small general partnership interest, there is a material issue of fact regarding whether RB4 was a sham to perpetuate a fraud.

## CONCLUSIONS

For reasons set forth above, the Trustee's Motion for Summary Judgment (docket # 798) is DENIED and the IRS cross motion for summary judgment is granted. This is partial summary judgment on solely on the issue of alter ego liability. The Court notes that the IRS amended its

---

[17] *Castleberry v. Branscum* 721 SW2d 270 (Tex. 1986).

proof of claim to add claims for taxes that were solely debtors.  That claim, and any issues other than alter ego liability, are reserved for Judge Bohm.

    SIGNED 01/03/2011.

_____
Wesley W. Steen
United States Bankruptcy Judge